**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| LEAH ROGERS, et al., | ) | |
| on behalf of themselves and all others | ) | |
| similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:24-cv-00410-GAF |
| | ) | |
| WOODBRIDGE CORPORATION and | ) | |
| ALLIED GLOBAL SERVICES LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## AMENDED COMPLAINT

Plaintiffs Leah Rogers, Niyaa Daniels, and Akosha Hatch ("Plaintiffs"), on behalf of themselves, a class, and a collective of all other similarly situated individuals, for their Amended Complaint against Defendants Woodbridge Corporation ("Woodbridge") and Allied Global Services LLC ("Allied") (collectively, "Defendants") state as follows:

### INTRODUCTION

1.    Rogers, Daniels, and Hatch bring this action in their individual capacities and on behalf of a class and collective of other similarly situated individuals.

2.    Rogers' individual claims arise in connection with Defendants' wrongful and unlawful termination of her employment in December 2023.

3.    The Plaintiffs' class and collective claims relate to the Defendants' improper and unlawful underpayment of wages to Plaintiffs and other similarly situated individuals.

4.    Specifically, Woodbridge and Allied failed to pay their hourly, non-exempt employees overtime compensation as required under Federal and Missouri law for all hours worked in excess of forty hours per week. Instead, Allied and Woodbridge unlawfully rounded

1

employee time at the beginning and end of their shifts, rounding time up at the start of a shift and down at the end of a shift in a manner that systematically worked against the employees and deprived them of pay for all hours worked.

5.     Rogers, Daniels, and Hatch, on behalf of themselves and others similarly situated, bring this class action under the Missouri Minimum Wage Law, R.S. Mo. §§ 290.500 *et seq.*, to recover unpaid wages and overtime compensation owed to them by Defendants.

6.     Additionally, Plaintiffs, on their own behalf and on behalf of all others similarly situated, bring their collective action under the Fair Labor Standards Act to recover unpaid wages and overtime compensation owed to them and other similarly situated workers who are and were employed by the Defendants.

## PARTIES, JURISDICTION, AND VENUE

7.     Rogers is an individual residing in Independence, Missouri. She is a former employee of Allied and Woodbridge.

8.     Daniels is an individual residing in Kansas City, Missouri. He is a former employee of Woodbridge.

9.     Hatch is an individual residing in Kansas City, Missouri. She is a former employee of Woodbridge.

10.     Woodbridge is a corporation organized and existing under the laws of the state of Wisconsin, with its principal place of business in Michigan. It can be served through its registered agent, CT Corporation System, at 120 S. Central Avenue, Suite 400, Clayton, MO 63105.

11.     Allied is a limited liability company organized and existing under the laws of the state of Kansas. It can be served through its registered agent, Spenserv, Inc. at 1000 Walnut Street, Suite 1400, Kansas City, MO 64106.

2

12.     The Plaintiffs' class and collective claims are brought pursuant to, respectively, the Missouri Minimum Wage Law ("MMWL"), R.S. Mo. § 290.500 *et seq.*, Missouri common law, and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*

13.     Plaintiff Rogers' individual claims are brought pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981 ("Section 1981").

14.      The Court has jurisdiction over the Plaintiffs' FLSA, Title VII, and Section 1981 claims pursuant to 28 U.S.C. § 1331 because they are brought under federal law.

15.     This Court has supplemental subject matter jurisdiction over the Plaintiffs' MMWL and Missouri common law claims pursuant to 28 U.S.C. § 1367, because those state law claims are so related to the Plaintiffs' FLSA claims that they form part of the same case or controversy under Article III of the U.S. Constitution.

16.     This Court has personal jurisdiction over Defendants because Woodbridge and Allied conduct business within the state, and because the acts or omissions alleged herein were done by Defendants within this state.

17.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims herein occurred in the Western District of Missouri.

18.     ***Relation Back***. Plaintiffs' class and collective claims in Counts I-VI of this Amended Complaint relate back to the date of their original pleading pursuant to Fed. R. Civ. P. 15(c), because the MMWL and FLSA allow for relation back and because Counts I-VI assert claims that arose from the same conduct, transaction, or occurrence set out in the original Petition, which was filed on May 8, 2024.

## FACTUAL BACKGROUND

***Class/Collective Claims***

19.     Plaintiffs Rogers, Daniels, and Hatch previously worked as hourly, non-exempt employees at Defendant Woodbridge's facility in Riverside, MO at all times relevant herein.

20.     Plaintiff Rogers was hired to work at Woodbridge through Defendant Allied, a staffing agency. Woodbridge and Allied co-determined key aspects of Rogers' employment such that they were her joint employers at all times relevant to this Amended Complaint.

21.     Plaintiffs Daniels and Hatch were directly employed by Defendant Woodbridge.

22.     Each of the Plaintiffs, whether employed directly by Woodbridge or jointly by Allied and Woodbridge, had scheduled start and end times to his or her work day.

23.     The Defendants' payroll policies permitted hourly, non-exempt employees, including the Plaintiffs, to clock in for work before their respective shifts started.

24.     The Defendants' payroll policies permitted hourly, non-exempt employees, including the Plaintiffs, to clock out for work after their respective shifts ended (e.g., they could clock out at 7:05am for a shift scheduled to end at 7:00am).

25.     On information and belief, when the Plaintiffs would clock in before their shifts started or clock out after their shifts ended, Defendant would round their time. For example if a Plaintiff clocked in at 10:50pm, Defendants would round their start time to 11:00pm.

26.     The same was and is true for all of Woodbridge's other hourly, non-exempt, current or former employees, and all of the hourly, non-exempt employees jointly employed by Woodbridge and Allied.

27.     On information and belief, for each of the named Plaintiffs and in the aggregate across the Defendants' hourly, non-exempt employees, the Defendants' rounding policies worked

4

against the employees, such that they were paid for less time than they were clocked in and working.

28. ***Rogers Joint Employment by Woodbridge and Allied.*** At all times material to this Petition, Daniels and Hatch were directly employed by Woodbridge. Rogers was jointly employed by both Woodbridge and Allied.

29. Rogers was initially hired by Allied, a staffing agency that provided employees to work at and for Woodbridge.

30. Woodbridge controlled Rogers' day-to-day work, and on information and belief, Woodbridge had the power to terminate her employment.

31. Woodbridge exercised supervision and control over Rogers' work, working conditions, and work schedule. For example, the employees who supervised her day-to-day work were Woodbridge employees.

32. On information and belief, Woodbridge determined how much to pay Allied for Rogers' work, thereby indirectly exercising significant control over Rogers' rate of pay.

33. On information and belief, Woodbridge maintains work records about Rogers' employment, including performance reviews, time sheets, and productivity records.

34. Woodbridge exercised control over how Rogers clocked in and out for work, including by setting her hours and determining where and how she recorded her time.

35. The manner in which Woodbridge employed and exercised control over Rogers was and is true for all other prospective Class Members who were jointly employed by Woodbridge and Allied.

36.    ***Class Allegations.*** Plaintiffs brings Count I, for violations of the Missouri Minimum Wage Law, R.S. Mo. § 290.500 *et seq.*, as a class action pursuant to Mo. R. Civ. P. 52.08, on their own behalf and as the Class Representatives on behalf of the following:

> All persons working as hourly, non-exempt employees for Woodbridge Corporation, from May 8, 2021 through the present.

37.    Plaintiff Rogers brings Count II, for violations of the Missouri Minimum Wage Law, R.S. Mo. § 290.500 *et seq.*, as a class action pursuant to Mo. R. Civ. P. 52.08, on her own behalf and as the Class Representative on behalf of the following:

> All persons working as hourly, non-exempt employees for who were jointly employed by Woodbridge Corporation and Allied Global Services LLC, from May 8, 2021 through the present.

38.    Plaintiffs bring Count III, for unjust enrichment in violation of Missouri common law, as a class action pursuant to Mo. R. Civ. P. 52.08, on their own behalf and as Class Representatives on behalf of the following:

> All persons working as hourly, non-exempt employees for Woodbridge Corporation, from May 8, 2019 through the present.

39.    Plaintiff Rogers brings Count IV, for unjust enrichment in violation of Missouri common law, as a class action pursuant to Mo. R. Civ. P. 52.08, on her own behalf and as a Class Representative on behalf of the following:

> All persons working as hourly, non-exempt employees for who were jointly employed by Woodbridge Corporation and Allied Global Services LLC, from May 8, 2019 through the present.

40.    Plaintiffs bring Count V, for violations of the FLSA, as an opt-in collective action pursuant to 29. U.S.C. § 216(b), on their own behalf and as Class Representatives on behalf of the following:

> All persons working as hourly, non-exempt employees for Woodbridge Corporation, from May 8, 2021 through the present.

6

41.     Plaintiff Rogers brings Count VI, for violations of the FLSA, as an opt-in collective action pursuant to 29 U.S.C. § 216(b), on her own behalf and as Class Representative on behalf of the following:

> All persons working as hourly, non-exempt employees for who were jointly employed by Woodbridge Corporation and Allied Global Services LLC, from May 8, 2021 through the present.

42.     Plaintiffs' state law claims under the Missouri Minimum Wage Law and Missouri common law satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action pursuant to Rule 23.

43.     These classes are believed to number in the hundreds of persons, and as a result, joinder of all class members in a single action is impracticable. Additionally, class members may be efficiently informed of the pendency of this class action through direct and/or electronic mail.

44.     There are questions of fact and law common to the class that, under Missouri law, predominate over any questions affecting only individual members, including but not limited to, the following:

a.    Whether Woodbridge and/or Allied violated Missouri law when they failed to pay their hourly, non-exempt employees for all of the hours they worked;

b.    Whether Woodbridge and/or Allied had a policy and practice of failing to compensate their hourly, non-exempt employees for all of the hours they worked;

c.    Whether Woodbridge and/or Allied failed to pay their hourly, non-exempt employees at an effective wage rate of at least the applicable minimum wage for all hours worked;

d.    Whether Woodbridge and/or Allied failed to pay their hourly, non-exempt employees an overtime premium for work performed in excess of 40 hours in a workweek; and

e.    Whether Woodbridge and/or Allied were unjustly enriched by their failure to compensate hourly, non-exempt employees for all hours during which they worked for the benefit of the company.

7

45.     The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity, to other available methods for the fair and efficient adjudication of the state law claims.

46.     The Plaintiffs claims under Federal and Missouri state law are typical of those of the class in that the class members have been employed in the same or similar positions as Plaintiffs and were subject to the same or similar unlawful practices as Plaintiffs.

47.     A class action is the appropriate method for the fair and efficient adjudication of this controversy. Defendants have acted or refused to act on grounds generally applicable to the class. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants, and/or substantially impair or impede the ability of class members to protect their interests.

48.     Plaintiffs are adequate representatives of the Missouri classes because they are members of the classes and their interests do not conflict with the interests of the members of the class they seek to represent. The interests of the members of the class will be fairly and adequately protected by Plaintiffs and undersigned counsel. Counsel are experienced in the litigation of civil matters, including the prosecution of complex wage and hour, employment, and class action cases.

49.     Maintenance of this action as a class action is a fair and efficient method for adjudication of this controversy. It would be impracticable and undesirable for each member of the class who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in

inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

50.     ***Plaintiff Rogers' Individual Claims.*** Plaintiff Leah Rogers is a former employee of Defendants Allied and Woodbridge, as set forth above. Rogers worked for Defendants for a few weeks in December 2023.

51.     Rogers was initially interviewed for the position by Justin Palmer, a recruiter for Allied. Once she began working, her paychecks came from Allied, but she was supervised most directly by Woodbridge and its employees, as set forth above in Paragraphs 28-35.

52.     On or around December 13, 2023, Rogers, who is biracial, was having a conversation with a Black coworker about cultural or colloquial use of the N-word among Black and biracial people. So far as Plaintiff knew initially, she and the coworker she was talking with were the only people in earshot of this conversation.

53.     Rogers was then approached by a supervisor, Ol Tran, and a white coworker named Richard. Richard looked Rogers in the eye and said "what did you say, [N-word]?" Richard's tone seemed taunting and gleeful, as if overhearing Rogers' conversation with her Black coworker had given him permission to use the racial slur.

54.     Tran, the supervisor, laughed and said "Whoa! Richard's being BOLD!"

55.     Rogers was concerned that Tran's response seemed to condone Richard's use of the slur.

56.     Rogers approached another supervisor named Rudy and told him what happened. Rudy responded by telling Rogers that it wasn't his problem, and that she needed to talk to Tran.

57.     Rudy also said that Rogers could talk to HR, but that she should "be careful," which Rogers took to mean that she might get in trouble if she did so.

58.     A week or so later, Rogers reported Richard's use of the N-word to Jeremy, who she understood to be a higher level manager.

59.     Jeremy initially responded that he did not believe Richard had called Rogers the N-word, and he told her to get back to work.

60.     Later that day, Jeremy told Rogers that he was going to investigate the matter. Rogers then saw him talking with a couple of her coworkers, including Richard.

61.     Jeremy then approached Rogers, said that she'd been "stirring up trouble" and that she "needed to leave."

62.     Rogers gathered her things and left. After Rogers left, she called Justin Palmer, her recruiter from Allied, to explain what happened.

63.     Palmer initially responded, "well that's what happens."

64.     Palmer then told Rogers he would consider her for other placement opportunities with Allied and its partners.

65.     After that conversation, Palmer never contacted Rogers again, effectively indicating that Rogers had been terminated not only from Woodbridge, but from Allied.

66.     ***Exhaustion of Administrative Remedies.*** On January 25, 2024, approximately a month after her December 2023 termination, Rogers filed Charges of Discrimination with the EEOC against both Allied and Woodbridge. On September 26, 2024, the EEOC issued Rogers' her Notices of Right to Sue on both Charges of Discrimination.

## COUNT I – VIOLATION OF THE MMWL
### (BROUGHT AGAINST WOODBRIDGE BY PLAINTIFFS ROGERS, DANIELS, AND HATCH, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED)

67.     Plaintiffs Rogers, Daniels, and Hatch incorporate the allegations set forth above as if fully set forth herein.

10

68.     At all times material to this Petition, Defendant Woodbridge has been an employer under the MMWL, R.S. Mo. § 290.500.

69.     At all times material to this Petition, Plaintiffs Daniels and Hatch were directly employed by Defendant Woodbridge.

70.     At all times material to this Petition, Plaintiff Rogers was employed by Woodbridge in that Woodbridge had the power to fire her, Woodbridge exercised supervision and control over her work, Woodbridge had a role in determining her rate of payment, and Woodbridge maintained records related to her employment. *See Tolentino v. Starwood Hotels & Resorts Worldwide, Inc.*, 437 S.W.3d 754 (Mo. banc 2014).

71.     At all times material to this Petition, Plaintiffs and the prospective class members have been employees of Defendant Woodbridge and thus entitled to the protections of the MMWL.

72.     The MMWL incorporates the overtime compensation provisions and associated regulations of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*

73.     Defendant's rounding policy and practice, as set forth above, violates the MMWL by failing to properly compensate Defendant's hourly, non-exempt employees overtime wages for all hours worked in excess of 40 hours per week in violation of R.S. Mo. § 290.505.

74.     As a result of Defendant's failure to properly compensate them, Plaintiffs and others similarly situated are entitled to recover lost wages, liquidated damages, attorneys' fees, and costs pursuant to R.S. Mo. § 290.527.

### COUNT II – VIOLATION OF THE MMWL
### (BROUGHT AGAINST ALLIED BY PLAINTIFF ROGERS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED)

75.     Plaintiff Rogers incorporates the allegations set forth above as if fully set forth herein.

11

76.     At all times material to this Petition, Defendant Allied has been an employer under the MMWL, R.S. Mo. § 290.500.

77.     At all times material to this Petition, Plaintiff Rogers, along with others similarly situated, were directly employed by Defendant Allied and thus entitled to the protections of the MMWL.

78.     The MMWL incorporates the overtime compensation provisions and associated regulations of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*

79.     Defendant's rounding policy and practice, as set forth above, violates the MMWL by failing to properly compensate Defendant's hourly, non-exempt employees overtime wages for all hours worked in excess of 40 hours per week in violation of R.S. Mo. § 290.505.

80.     As a result of Defendant's failure to properly compensate them, Plaintiffs and others similarly situated are entitled to recover lost wages, liquidated damages, attorneys' fees, and costs pursuant to R.S. Mo. § 290.527.

81.     Defendant Allied, as a joint employer of Rogers and others similarly situated, is jointly and severally liable along with Defendant Woodbridge, for the harms caused by its violations of the MMWL.

### COUNT III – QUANTUM MERUIT/UNJUST ENRICHMENT
**(BROUGHT AGAINST WOODBRIDGE BY PLAINTIFFS ROGERS, DANIELS, AND HATCH, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED)**

82.     Plaintiffs Rogers, Daniels, and Hatch incorporate the allegations above as if fully set forth herein.

83.     Plaintiffs and all others similarly situated provided good and valuable services to Woodbridge and contributed to the company's success, including during the time they worked that was rounded off their pay,

84. Woodbridge, as a result of its rounding policy and practice, has been and continues to be enriched by making deficient payments for productive work performed by Plaintiffs and other similarly situated employees. Defendant has been enriched at the expense of Plaintiffs and other similarly situated employees because Plaintiffs and others were not compensated for their work.

85. Plaintiffs and all others similarly situated provided those services based on the reasonable expectation that they would be compensated for all hours worked.

86. Woodbridge knowingly accepted and appreciated the benefits of the services performed by Plaintiffs and all others similarly situated.

87. Woodbridge unjustly withheld wages from Plaintiffs and all others similarly situated for hours worked but rounded away from their compensated time, both directly (in the case of Daniels and Hatch) and indirectly via lower payments to Allied as a staffing agency that predictably and proximately resulted in pay for rounded time being withheld from Rogers.

88. Under the circumstances, it would be inequitable for Woodbridge to retain the benefit of Plaintiff's work without providing full compensation for all worked hours.

## COUNT IV – QUANTUM MERUIT/UNJUST ENRICHMENT
### (BROUGHT AGAINST ALLIED BY PLAINTIFFS ROGERS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED)

89. Plaintiff Rogers incorporates the allegations above as if fully set forth herein.

90. Plaintiff and all others similarly situated provided good and valuable services to Allied and contributed to the company's success, including during the time she worked that was rounded off their pay,

91. Allied, as a result of its rounding policy and practice, has been and continues to be enriched by making deficient payments for productive work performed by Plaintiff and other

13

similarly situated employees. Defendant has been enriched at the expense of Plaintiff and other similarly situated employees because Plaintiff and others were not compensated for their work.

92.     Plaintiff and all others similarly situated provided those services based on the reasonable expectation that they would be compensated for all hours worked.

93.     Allied knowingly accepted and appreciated the benefits of the services performed by Plaintiff and all others similarly situated.

94.     Allied unjustly withheld wages from Plaintiff and all others similarly situated for hours worked but rounded away from their compensated time.

95.     Under the circumstances, it would be inequitable for Allied to retain the benefit of Plaintiff's work without providing full compensation for all worked hours.

### COUNT V – VIOLATION OF THE FLSA
**(BROUGHT AGAINST WOODBRIDGE BY PLAINTIFFS ROGERS, DANIELS, AND HATCH, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED)**

96.     Plaintiffs Rogers, Daniels, and Hatch incorporate the allegations set forth above as if fully set forth herein.

97.     At all times material to this Petition, Defendant Woodbridge has been an employer under the FLSA.

98.     At all times material to this Petition, Plaintiffs Daniels and Hatch were directly employed by Defendant Woodbridge.

99.     At all times material to this Petition, Plaintiff Rogers was employed by Woodbridge in that Woodbridge had the power to fire her, Woodbridge exercised supervision and control over her work, Woodbridge had a role in determining her rate of payment, and Woodbridge maintained records related to her employment.

14

100.     At all times material to this Petition, Plaintiffs and the prospective class members have been employees of Defendant Woodbridge and thus entitled to the protections of the FLSA.

101.     The FLSA regulates, among other things, the payment of wages and overtime pay by employers engaged in interstate commerce or engaged in the production of goods for commerce, such as Woodbridge. 29 U.S.C. § 207(a)(1).

102.     Defendant's rounding policy and practice, as set forth above, violates the FLSA by failing to properly compensate Defendant's hourly, non-exempt employees overtime wages for all hours worked in excess of 40 hours per week.

103.     Plaintiffs and all others similarly situated are entitled to damages equal to the amount of uncompensated time that they worked for Woodbridge, as well as the mandated minimum wage and overtime premium pay, within the three years preceding the filing of their Petition, plus periods of equitable tolling, because Defendant acted willfully and knew or showed reckless disregard for its violation of the FLSA's requirements.

104.     Defendant has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA. As a result, Plaintiffs and others similarly situated are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid wages, as described at 29 U.S.C. § 216(b). Alternatively, should the Court find Defendant acted in good faith in failing to pay its employees overtime compensation, Plaintiffs and all others similarly situated are entitled to an award of prejudgment interest at the applicable legal rate.

105.     In addition to their unpaid minimum wages, overtime wages, and liquidated damages and/or pre-judgment and post-judgment interest, Plaintiffs seek recovery of their attorneys' fees, costs, and expenses reasonably incurred in bringing this action.

## COUNT VI – VIOLATION OF THE FLSA
## (BROUGHT AGAINST ALLIED BY PLAINTIFF ROGERS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED)

106.    Plaintiff Rogers incorporates the allegations set forth above as if fully set forth herein.

107.    At all times material to this Petition, Defendant Allied has been an employer under the FLSA.

108.    At all times material to this Petition, Plaintiff Rogers, along with others similarly situated, were directly employed by Defendant Allied and thus entitled to the protections of the FLSA.

109.    The FLSA regulates, among other things, the payment of wages and overtime pay by employers engaged in interstate commerce or engaged in the production of goods for commerce, such as Allied. 29 U.S.C. § 207(a)(1).

110.    Defendant's rounding policy and practice, as set forth above, violates the FLSA by failing to properly compensate Defendant's hourly, non-exempt employees overtime wages for all hours worked in excess of 40 hours per week.

111.    Plaintiff and all others similarly situated are entitled to damages equal to the amount of uncompensated time that they worked for Allied, as well as the mandated minimum wage and overtime premium pay, within the three years preceding the filing of their Petition, plus periods of equitable tolling, because Defendant acted willfully and knew or showed reckless disregard for its violation of the FLSA's requirements.

112.    Defendant has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA. As a result, Plaintiff and others similarly situated are entitled to recover an award of liquidated damages in an amount equal to the

16

amount of unpaid wages, as described at 29 U.S.C. § 216(b). Alternatively, should the Court find Defendant acted in good faith in failing to pay its employees overtime compensation, Plaintiffs and all others similarly situated are entitled to an award of prejudgment interest at the applicable legal rate.

113.    In addition to their unpaid minimum wages, overtime wages, and liquidated damages and/or pre-judgment and post-judgment interest, Plaintiffs seek recovery of their attorneys' fees, costs, and expenses reasonably incurred in bringing this action.

114.    Defendant Allied, as a joint employer of Rogers and others similarly situated, is jointly and severally liable along with Defendant Woodbridge, for the harms caused by its violations of the FLSA.

***

WHEREFORE, for Plaintiffs' class and collective claims set forth in Counts I through VI, Plaintiffs and all other similarly situated employees demand judgment against Defendants and request that this Court:

(a)    issue notice to all similarly situated employees (current or former) of Defendants informing them of the pendency of this action;

(b)    certify the claims as class actions pursuant to Rule 23;

(c)    designate named Plaintiffs as class representatives, acting for and on behalf of Class Members;

(d)    direct that notice be issued to all class members, advising them of the pendency of this action and their rights in this case;

(e)    declare the Defendants' rounding policies and other improper payroll policies illegal under the MMWL and the FLSA;

17

(f) award Plaintiffs and all other similarly situated employees their lost wages, minimum wages, overtime wages, and liquidated damages under RS Mo. § 290.527 and the FLSA;

(g) award Plaintiff and all other similarly situated employees pre-judgment and post-judgment interest as provided by law;

(h) award Plaintiff and all other similarly situated employees attorneys' fees, expenses, and costs, as allowed by RS Mo. § 290.527 and the FLSA;

(g) require Defendants to disgorge the benefits unjustly obtained by withholding pay for Plaintiff's work; and

(g) award Plaintiffs and all other similarly situated employees such other relief as the Court deems just and proper in the circumstances.

## <u>COUNT VII – RACE DISCRIMINATION (TITLE VII)</u>
**(BROUGHT AGAINST ALLIED AND WOODBRIDGE BY PLAINTIFF ROGERS, INDIVIDUALLY)**

115. Plaintiff Rogers incorporates the allegations set forth above as if fully set forth herein.

116. Allied and Woodbridge are covered employers under Title VII.

117. Plaintiff, a biracial, African-American woman, is a covered employee under Title VII. She is a former employee of Defendants Allied and Woodbridge.

118. At the time of her termination, Plaintiff was meeting the Defendants' legitimate job expectations.

119. Rogers suffered an adverse employment action when her employment was terminated in December 2023.

120. The facts and circumstances of Rogers' termination, which occurred the same day she reported a coworker for using a racial slur, and was carried out by the same supervisor who

18

disbelieved Rogers' report, and happened just a few days after another supervisor laughed off use of the racial slur, create an inference that Rogers' termination was a result of unlawful race discrimination.

121.    The Defendants' termination of Rogers has caused her to lose wages and benefits, and caused her to suffer garden variety mental and emotional distress, humiliation, frustration, and embarrassment, such that she is entitled to an award of back pay and compensatory damages.

122.    The Defendants' discriminatory conduct was willful and deliberate, and done with reckless disregard for the rights of Rogers, thereby entitling her to an award of punitive damages in an amount that will punish Defendants, and deter Defendants and others from similar conduct in the future.

123.    Defendants Allied and Woodbridge, as Rogers' joint employers, are jointly and severally liable for the harms caused by their violations of Title VII.

## COUNT VIII – RETALIATION (TITLE VII)
### (BROUGHT AGAINST ALLIED AND WOODBRIDGE BY PLAINTIFF ROGERS, INDIVIDUALLY)

124.    Plaintiff Rogers incorporates the allegations set forth above as if fully set forth herein.

125.    Allied and Woodbridge are covered employers under Title VII.

126.    Plaintiff, a biracial, African-American woman, is a covered employee under Title VII. She is a former employee of Defendants Allied and Woodbridge.

127.    At the time of her termination, Plaintiff was meeting the Defendants' legitimate job expectations.

128.    Rogers suffered an adverse employment action when her employment was terminated in December 2023.

129.   The facts and circumstances of Rogers' termination, which occurred the same day she reported a coworker for using a racial slur, and was carried out by the same supervisor who disbelieved Rogers' report, create an inference that Rogers' termination was a result of unlawful retaliation for her report of race discrimination.

130.   The Defendants' termination of Rogers has caused her to lose wages and benefits, and caused her to suffer garden variety mental and emotional distress, humiliation, frustration, and embarrassment, such that she is entitled to an award of back pay and compensatory damages.

131.   The Defendants' retaliatory conduct was willful and deliberate, and done with reckless disregard for the rights of Rogers, thereby entitling her to an award of punitive damages in an amount that will punish Defendants, and deter Defendants and others from similar conduct in the future.

132.   Defendants Allied and Woodbridge, as Rogers' joint employers, are jointly and severally liable for the harms caused by their violations of Title VII.

## COUNT IX – INTENTIONAL DISCRIMINATION (42 U.S.C. § 1981)
### (BROUGHT AGAINST ALLIED AND WOODBRIDGE BY
### PLAINTIFF ROGERS, INDIVIDUALLY)

133.   Plaintiff Rogers incorporates the allegations set forth above as if fully set forth herein.

134.   Allied and Woodbridge are covered employers subject to the provisions of Section 1981.

135.   Plaintiff, a biracial, African-American woman, is a covered employee entitled to the rights and protections of Section 1981. She is a former employee of Defendants Allied and Woodbridge.

136.    At the time of her termination, Plaintiff was meeting the Defendants' legitimate job expectations.

137.    Rogers suffered an adverse employment action when her employment was terminated in December 2023.

138.    The facts and circumstances of Rogers' termination, which occurred the same day she reported a coworker for using a racial slur, and was carried out by the same supervisor who disbelieved Rogers' report, and happened just a few days after another supervisor laughed off use of the racial slur, create an inference that Rogers' termination was a result of unlawful, intentional race discrimination.

139.    The Defendants' termination of Rogers has caused her to lose wages and benefits, and caused her to suffer garden variety mental and emotional distress, humiliation, frustration, and embarrassment, such that she is entitled to an award of back pay and compensatory damages.

140.    The Defendants' discriminatory conduct was willful and deliberate, and done with reckless disregard for the rights of Rogers, thereby entitling her to an award of punitive damages in an amount that will punish Defendants, and deter Defendants and others from similar conduct in the future.

141.    Defendants Allied and Woodbridge, as Rogers' joint employers, are jointly and severally liable for the harms caused by their violations of Section 1981.

WHEREFORE, Plaintiff Leah Rogers respectfully requests that the Court enter judgment in her favor and against Defendants Allied and Woodbridge on Counts VII-IX of the Amended Complaint; for a finding that she has been discriminated against and retaliated against in violation of Title VII and Section 1981; for back pay and front pay; for compensatory and punitive damages;

equitable relief; costs expended; reasonable attorneys' fees; and for such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury for the foregoing causes of action.

## DESIGNATION OF PLACE OF TRIAL

Plaintiffs hereby requests the trial be held in Kansas City, Missouri.

**HKM EMPLOYMENT ATTORNEYS LLP**

By:  */s/ Kevin A. Todd*
Brad K. Thoenen, MO 59778
bthoenen@hkm.com
John J. Ziegelmeyer III, MO 59042
jziegelmeyer@hkm.com
Kevin A. Todd, MO 73048
ktodd@hkm.com
Ethan R. Crockett, MO 74921
ecrockett@hkm.com
1501 Westport Road
Kansas City, Missouri 64111
816.875.9339

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 12, 2024, a copy of the foregoing was served via the Court's electronic filing system on all counsel of record.

*/s/ Kevin A. Todd*
Attorney for Plaintiff